| | |
|---|---|
| SUSAN CAROL YANKE, | |
| **Plaintiff,** | |
| v. | **ORDER** |
| MUELLER DIE CUT SOLUTIONS, INC., | |
| **Defendant.** | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion for Summary Judgment" (Document No. 68) and Memorandum of Law in Support of Defendant's Motion for Summary Judgment" (Document No. 69), filed July 29, 2005; pro se Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 81), filed September 26, 2005, and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 82), filed October 5, 2005. The parties have consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c), and this matter is now ripe for disposition.

Having carefully considered the record, applicable authority, and the arguments of the parties at a Motions Hearing, the undersigned will <u>grant in part</u> the "Motion for Summary Judgment" (Document No. 68). Specifically, Defendant's Motion for Summary Judgment is granted as to all claims asserted in Plaintiff's Complaint (Document No. 1) <u>except</u> the claims for sexual harassment and general harassment.

For purposes of this Order, the undersigned will not address those facts and law pertaining to Plaintiff's claims of sexual harassment and general harassment.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff filed a Complaint in this Court on or about November 3, 2003. The Defendant filed its timely Answer on September 22, 2004. The Plaintiff is not represented by counsel and is proceeding pro se in this lawsuit. Discovery has been taken by the parties in accordance with the Case Management Plan.

Plaintiff's Complaint consists of a "form" complaint, an additional section that Plaintiff appears to have drafted herself, and a number of attached exhibits (Document No. 1). The Complaint generally alleges that this action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination. In the form portion of the Complaint, the Plaintiff alleges the following discriminatory acts (based on sex): (a) Failure to employ; (b) Failure to promote; (c) Termination of my employment; (d) Demotion; (e) Denied equal pay/work; (f) Sexual Harassment; (g) General Harassment; (h) Other acts – specifically "denial of Family Medical Leave (FMLA) in December of 2001 for medical attention for my six (6) year old son. Tests and treatment were being conducted for congenital lobal emphasema [sic]." (Complaint, ¶ 6)(Document No. 1).

In addition to the general description of sex discrimination, sexual harassment and denial of FMLA leave, Plaintiff's Complaint sets forth nineteen different "Counts." The Court categorizes these Counts as follows: (1) harassment [Counts I-VII; X-XIV, and XVII]; (2) discriminatory denial of pay raise [Count XV]; (3) denial of FMLA leave [Count VIII]; (4) retaliation [Counts IX and XVI-XIX]; (5) slander [Counts VII and XIX]; and (6) misrepresentation [Count XIX]. Plaintiff's slander claim stems from her allegedly being referred to as a "man-eater." Her misrepresentation claim arises out of Human Resources Manager

Russell Yeomans' alleged comments to a prospective employer after Plaintiff had gone on medical leave (Document No. 1).

**<u>Summary of the Facts:</u>**

Defendant is a manufacturer of various products including gaskets, seals, and filters. Defendant sells its products to customers in the aviation, electronics, and automotive industries.

Plaintiff applied for a job with Defendant in Charlotte, North Carolina in January or February 2000. She was interviewed by Human Resources Manager Russell Yeomans and Customer Service/Sales Manager Wayne Bates. Shortly after her interview, Plaintiff was hired for a customer service/sales position, and she remained in that job for the duration of her employment with Defendant. Plaintiff's first day of employment with Defendant was February 21, 2000. Plaintiff's immediate supervisor throughout her employment was Wayne Bates.

In the customer service/sales job, Plaintiff serviced approximately 40 customers. Her job duties included entering orders, getting the order prices detailed, and getting the orders shipped out on time. Her job also involved working with people in other departments, including the quoting department, shipping department, and sales representatives. As part of her job, Plaintiff was responsible for receiving an order and following it through until it was shipped out and received by the customer. The orders she received came from existing customers and "outside salesmen" employed by Defendant.

Plaintiff received regular quarterly and annual evaluations during her employment with Defendant. Specifically, Plaintiff received quarterly reviews on August 17, 2000, October 30, 2000, January 31, 2001, June 7, 2001, August 15, 2001, October 25, 2001 and February 5, 2002. Each of the quarterly reviews listed areas in which Plaintiff was performing well and areas in which she needed to improve. Plaintiff also received "annual reviews" on May 26, 2000,

February 21, 2001, and March 1, 2002. She received pay raises with the first and second annual reviews, but she did not receive a pay raise with the third annual review.

In some of Plaintiff's performance reviews, Defendant noted that Plaintiff needed to improve in the area of "conflict resolution." The August 15, 2001 review notes that "when Ken [Stober] requests something, [it] must be done in a timely manner" and that Plaintiff needed to "continue to work on conflict resolution issues." In her October 25, 2001 review, Plaintiff was again informed that she needed improvement in resolving conflicts with people in other departments and that she "needs to be a team player."

Because salesmen had complained to her that they were not getting answers to purchasing, materials, and quoting requests, Plaintiff began to use email extensively starting about December 2001 or January 2002 in an effort to document that she was doing her job. Plaintiff often copied other people on her emails. On one occasion when she was having difficulty getting a response from Purchasing Manager Jeanne Nellis, she copied an outside salesman, Wayne Bates, and Defendant's President, Ken Stober, on the email. Defendant's Quoting Manager, Scott Randolph, specifically requested that Plaintiff not copy the customer on internal emails.

On another occasion, Plaintiff sent Wayne Bates fourteen emails. Bates asked her why she did this, and her response was "because I am tired of getting blamed for not following up on my orders." Bates told Plaintiff that he did not like her sending so many emails. When he saw Plaintiff writing a note to Scott Randolph, he told Plaintiff to communicate orally instead. Plaintiff ignored Bates' directive to talk to Randolph about the order, and sent an email instead.

On February 5, 2002, Plaintiff met with Wayne Bates and Russell Yeomans to receive another quarterly review. Bates told Plaintiff during their meeting that cooperation with other

departments was continuing to be a problem for her. Among other things, the review indicates that Defendant wanted Plaintiff to communicate better with the Outside Sales department, and that Plaintiff needed to take a "communicating class if available." The review also stated that Plaintiff must show improvement in these areas immediately or further action would be necessary.

Plaintiff testified that she was called into another meeting with Wayne Bates, Russell Yeomans, and Financial Manager, Jim Brazas, on February 22, 2002. In that meeting, Plaintiff was asked if everything was all right. Plaintiff replied that everything was all right and she just wanted to concentrate on her job and not make any mistakes.

On Friday, March 1, 2002, Plaintiff met with Yeomans, Bates, and Brazas, at which time she received her third annual review. This review states that Defendant was concerned about Plaintiff's "lack of enthusiasm and obligation toward the techniques and responsibilities of her customer service position." The review also lists five bullet points regarding the areas in which Defendant wanted Plaintiff to improve. One such area concerned the "use of appropriate methods of communication to engage other staff members and departments in a supportive and productive manner." The review further states that "to prevent future disciplinary action, [Plaintiff] will have to show visible signs of improvement in the aforementioned areas as well as a willingness to further develop the effectiveness of herself and the Customer Service Department. We feel confident in her ability to make the above noted improvements." Because of this negative evaluation, Plaintiff was not given a raise at that time.

The next workday after receiving the March 1, 2002 review, Plaintiff informed Bates that she needed time off for a doctor's appointment. This time off was granted. Then on the morning of Tuesday, March 5, 2002, Plaintiff sent Russell Yeomans an email complaining about

the following issues: (1) that on February 22, 2002, Wayne Bates denied her request for FMLA leave to take care of her son; and (2) that when she attempted to discuss "issues I have with certain Managers," Jim Brazas told her to talk to Russell Yeomans, and Yeomans told her that they would discuss the issues in her March 1, 2002 review. Plaintiff did not specify in this email what the issues were or with which managers she had the issues.

Plaintiff did not return to work after her doctor's appointment on March 5, 2002. Rather, she reported to Defendant by email that she was having stomach problems and migraines, and she provided a medical excuse that said she was unable to return to work for 30 days. Plaintiff did not return to work after the end of that 30-day period, and she remained out of work on a medical disability leave paid for by Defendant for another 26 weeks. Defendant ultimately terminated Plaintiff's employment in September of 2002, due to Plaintiff's failure to return to work following the exhaustion of her disability leave.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be granted if the pleadings, responses to discovery, and affidavits, if any, establish that "there is no genuine issue as to any material fact …." Fed. R. Civ. P. 56(c). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F. Supp. 2d 545, 547 (W.D.N.C. 2000)(citations omitted).

A genuine issue of material fact exists only if a reasonable jury could return a verdict for the plaintiff on the evidence presented.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response … must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  Importantly, in deciding a motion for summary judgment, the court views the evidence presented in the light most favorable to the non-moving party-  that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

## III.  DISCUSSION

### A.    Plaintiff's Claims of Sex Discrimination.

Where, as in this case, no direct evidence of sex discrimination has been presented, the Court must apply the familiar burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and its progeny in analyzing a plaintiff's claims of sex discrimination under Title VII.   Under the McDonnell Douglas framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).  If a plaintiff succeeds in demonstrating a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged decision.  Reeves, 530 U.S. at 142.   However, the defendant's burden "is one of production, not persuasion."  Id.   If the defendant satisfies this burden, the plaintiff must then demonstrate that the defendant's articulated reasons "were not its true reasons, but were a pretext for discrimination."  Id. at 143.   The ultimate burden of persuasion rests at all times with the plaintiff.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 253, 67 L. Ed. 2d 207 (1981).

### 1.    Failure To Employ and Promote.

To establish a <u>prima facie</u> case of sex discrimination for failure to employ and promote types of claims under the <u>McDonnell Douglass</u> framework, a plaintiff must establish the following elements:  "(1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination."  <u>See</u>, <u>e.g.</u>, <u>Anderson v. Westinghouse Savannah River Co</u>., 406 F.3d 248, 268 (4th Cir. 2005); <u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004).

In the instant case, Plaintiff admits that she applied for the position of customer service representative and that Defendant hired her in February 2000.  Plaintiff does not allege that there was any discrimination with regard to her hiring.  It is undisputed that Plaintiff remained in the customer service position until on or about March 5, 2002, at which time she went on a leave of absence due to medical reasons.  Thereafter, Plaintiff was paid disability benefits by Defendant for approximately 26 weeks.  After such benefits were exhausted, Defendant ultimately terminated Plaintiff's employment in September of 2002 due to Plaintiff's failure to return to work.  Plaintiff testified that she could not work in any capacity because of her disability from March 2002 through October 2002.  She also testified that she cannot do any type of manufacturing job and that she is not sure whether she is capable of performing a customer service job or similar position.  Consequently, Plaintiff fails to present any evidence demonstrating a genuine issue of material fact that she was qualified to perform her customer service position, or that Defendant rejected her from that position under circumstances giving rise to an inference of discrimination, after March 5, 2002.  Moreover, Plaintiff does not present any evidence of any other job with Defendant that she was capable of performing, or that she applied to perform, but was rejected from filling at any time during her employment with

Defendant. Under these circumstances, Plaintiff fails to establish a <u>prima facie</u> case regarding her "failure to employ" claim.

As to her failure to promote claim, Plaintiff testified that "some day I would like to have been customer service manager." She also testified that she told her supervisor from time to time that she would like to be a production supervisor or an office manager. Plaintiff admits, however, that there was no job opening for these positions during her employment with Defendant and that she never applied for any such position. She also admits that no customer service manager position became available during her employment with Defendant, or that she ever applied for such a position and was rejected. Thus, Plaintiff has failed to establish a genuine issue of material fact with respect to the second and fourth elements of her <u>prima facie</u> case regarding her failure to promote claim. As such, Defendant is entitled to summary judgment as to this claim.

### 2. Demotion Claim.

To establish a <u>prima facie</u> case under Title VII regarding a discriminatory demotion claim, a plaintiff must show that (1) plaintiff belongs to a protected class; (2) plaintiff was performing her job satisfactorily (3) despite her performance, plaintiff was removed from her job; and (4) after her removal her job remained open to similarly qualified applicants. <u>See</u>, <u>e.g.</u>, <u>Combs-Burge v. Rumsfeld</u>, 170 Fed. Appx. 856, 863 (4th Cir. 2006)(citing <u>Love-Lane v. Martin</u>, 355 F.3d 766, 787 (4th Cir. 2004)).

Here, Plaintiff claims that after her March 1, 2002 performance review, Defendant put her on a ninety-day probation and that such probation was, in effect, a demotion. Plaintiff admits, however, that Mueller never changed her job position or responsibilities or terminated her employment as customer service representative. Plaintiff also admits that after she informed her supervisors during the March 1, 2002 meeting that she had gone out of her way to deliver

parts to a customer, Mueller gave her a superior performance award on March 4, 2002.  Under these circumstances, the Court does not find any evidence to conclude that Plaintiff was removed from her job by Defendant at any time between March 1, 2002 and September of 2002.  Therefore, Plaintiff fails to satisfy the third element of the <u>prima facie</u> case.

Plaintiff also fails to establish a genuine issue of material fact that she was performing her job satisfactorily as of March 1, 2002.  The record is uncontroverted that Defendant had expressed dissatisfaction with Plaintiff's job performance in a various written reviews- including the March 1, 2002 annual review.  Plaintiff may contend that her job performance was satisfactory; however, Plaintiff's self-assessment of her own performance is irrelevant.  "When, as here, the employer has 'offered substantial evidence that [plaintiff] was not in fact meeting legitimate job performance expectations, chronicling in detail [plaintiff]'s poor performance,' plaintiff's unsubstantiated testimony to the contrary is not sufficient to establish a <u>prima facie</u> case of discrimination.'" <u>Dalton v. Avis Rent a Car Sys., Inc.</u>, 336 F. Supp. 2d 534, 539 (M.D.N.C. 2004)(quoting <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003)).  <u>See also</u> <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.")  Therefore, Plaintiff has not met her burden of establishing the second element of a <u>prima facie</u> case of discriminatory demotion.

Finally, because Plaintiff has no evidence that she was ever removed from her customer service position, she likewise cannot prove the fourth element of her demotion claim.  For these reasons, Defendant is entitled to summary judgment regarding this claim.

### 3. Termination Claim.

To establish a prima facie case of discriminatory discharge based on sex, a plaintiff must show "(1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action she was performing at a level that met her employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly qualified applicants outside the protected class." Brinkley v. Harbour Rec. Club, 180 F.3d 598, 607 (4th Cir. 1999).

As noted above, the evidence is undisputed that Plaintiff was unable to perform her customer service position after March 5, 2002, due to personal medical problems. Defendant terminated Plaintiff's employment in September of 2002 due to Plaintiff's failure to return to work following her receipt of 26 weeks of disability benefits. Under these circumstances, Plaintiff cannot establish that she was performing her job at a level that met Defendant's expectations at the time of the discharge. Therefore, Plaintiff fails to satisfy the third element of her prima facie case regarding her termination claim.

Nevertheless, even if Plaintiff could make out a prima facie case, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment; namely, that Plaintiff had remained out of work for over six months, and she still had not been released by her physician to return to work as of September of 2002. Indeed, as noted above, Plaintiff admits that she could not work in any capacity because of her disability from March 2002 through October 2002. She also testified that she cannot do any type of manufacturing job and that she is not sure whether she is capable of performing a customer service job or similar position. In view of these undisputed facts, Plaintiff has not presented any evidence to suggest that Defendant's reason for terminating Plaintiff's employment was a pretext for sex discrimination. Defendant is entitled to summary judgment as to this claim.

### 4. Denial of Equal Pay Claim.

In order to establish a prima facie case of unequal pay in violation of the Equal Pay Act, a plaintiff must prove: "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." Brinkley v. Harbour Rec. Club, 180 F.3d 598, 613 (4th Cir. 1999).

Here, Plaintiff claims that Defendant denied her equal pay because the company did not give her a raise on March 1, 2002. However, Plaintiff has not put forth any evidence that Defendant paid different wages to employees of opposite sexes for jobs that require equal skill, effort, and responsibility. Therefore, she is unable to state a prima facie case of unequal pay. Defendant is entitled to summary judgment with respect to this claim.

### 5. Denial Of Pay Raise Claim.

To establish a prima facie case of discriminatory compensation under Title VII, a plaintiff must show that (1) she is a member of a protected class and (2) the job she held was similar to higher paying jobs occupied by males. See Brinkley-Obu v. Hughes Training, 36 F.3d 336, 343 (4th Cir. 1994). "Under Title VII, a prima facie case of sex discrimination requires showing a connection between sex and the adverse employment decision." Brinkley-Obu, 36 F.3d at 343.

In the instant case, Plaintiff generally alleges that everyone else usually received a customary three percent (3%) annual raise, but that she did not receive a pay increase with her March 1, 2002 annual review. However, Plaintiff offers no evidence that a similarly situated male employee received a raise. Also, the evidence is uncontroverted that in 2002, all of Defendant's non-management administrative employees, including Plaintiff, were women. All such employees in 2002 received a pay raise except Plaintiff. Under these facts, Plaintiff has

failed to present any evidence to establish a <u>prima</u> <u>facie</u> case of sex discrimination regarding her pay raise claim.

Even assuming, arguendo, that Plaintiff has presented evidence to show a <u>prima</u> <u>facie</u> case, the Court finds that Defendant has produced a legitimate, non-discriminatory reason for not giving Plaintiff a pay raise; namely, that Plaintiff was not performing her job in a satisfactory manner, as indicated in Plaintiff's March 1, 2002 review. Therefore, Plaintiff has the burden to demonstrate that Defendant's stated reasons were a pretext for gender discrimination. The Court finds that Plaintiff has failed to establish a genuine issue of material fact regarding this burden.

When an employer gives a legitimate, nondiscriminatory reason for an employment action, it is not the province of the Court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the employment action. <u>DeJarnette v. Corning Inc</u>. 133 F.3d 293, 299 (4th Cir. 1998)(quoting <u>Giannopoulos v. Brach & Brach Confections, Inc</u>., 109 F.3d 406, 410-11 (7th Cir. 1997)). Here, Defendant's assessment of Plaintiff's performance is stated in the March 1, 2002 annual review. Plaintiff has presented no evidence to indicate that Defendant's decision to deny a pay raise to Plaintiff was based upon anything other than this negative performance evaluation. Plaintiff herself admits that she was not following through with many of her employer's expectations. Plaintiff's belief or speculation to the contrary is insufficient to establish a genuine issue of material fact. Accordingly, Plaintiff has offered no evidence of pretext. Defendant is entitled to summary judgment with respect to Plaintiff's denial of raise claim.

### B. Plaintiff's Retaliation Claims.

To establish a claim of retaliation under Title VII, a plaintiff must show: (1) that she engaged in a protected activity; (2) that the employer took an adverse action against her; and (3)

that a causal connection existed between the protected activity and the adverse action.  See, e.g., Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 271 (4th Cir. 2001).  Once a prima facie case is established, the court must consider whether the defendant has offered a legitimate, nonretaliatory reason for the action; if so, the plaintiff must prove that the reason is a pretext for retaliation.  See Matvia, 259 F.3d at 272-73.

Plaintiff alleges in her Complaint the following acts of retaliation:

(1)    On February 3, 2002, Wayne Bates was reprimanded for his handling of an IBM order.  When Mr. Bates was told to take care of it, he took it out on Plaintiff by giving her a negatively quarterly review on February 5, 2002 in which she was told she needed to "take ownership" of customer problems and communicate them with the salesmen.   (Complaint, Count IX).

(2)    On March 12, 2002, Plaintiff was denied worker's compensation by Mueller's Work Compensation Carrier. (Complaint, Count XVI).

(3)    On October 6, 2002, Mueller "attempted to deny her claim" for unemployment benefits.  Plaintiff alleges that the North Carolina Employment Security Commission ("ESC") "found overwhelmingly" that Mueller "had lied about the circumstances that led up to her leaving the workplace."  The ESC awarded Plaintiff unemployment insurance compensation. (Complaint, XVIII).

With regard to the first claim of retaliation (Count IX), Plaintiff fails to allege or present evidence of any protected activity in which she engaged prior to the February 3, 2002 review.  Moreover, Plaintiff contends only that Bates gave her a negative review because he was disciplined for his handling of an IBM order.  Therefore, Plaintiff acknowledges that this alleged adverse action was not causally connected to anything other than Defendant's criticism of Bates' work performance.  Plaintiff fails to establish a prima facie case of retaliation under Title VII regarding this count in her Complaint.

With regard to the second alleged act of retaliation (Count XVI), Plaintiff maintains that Defendant violated Title VII because the company's insurance carrier denied Plaintiff's worker's compensation claim.  Similarly, with regard to the third alleged act of retaliation (Count XVIII),

Plaintiff contends that Defendant attempted to "deny her claim" for unemployment benefits by lying to the N.C. Employment Security Commission regarding the circumstances of her employment termination. However, Plaintiff fails to demonstrate how either the filing of a worker's compensation claim, or a claim for unemployment benefits, constitutes protected activity under Title VII.

Plaintiff also has provided no admissible evidence that Defendant engaged in any adverse action with regard to her claims for worker's compensation or unemployment benefits. Plaintiff acknowledges that a third party (i.e., the insurance carrier) denied the worker's compensation claim, and she offers no evidence that Defendant acted improperly or provided any false information with regard to that claim. Likewise, Plaintiff has provided no evidence, beyond her own speculation, of any misrepresentation or false statement made by Defendant to the Employment Security Commission regarding Plaintiff's claim for unemployment benefits. The Court does not consider an employer's lawful participation in an employee's worker's compensation or unemployment benefit proceedings as an "adverse action" within the meaning of Title VII, particularly where there is no evidence to suggest that the employer harbored a motive to subvert those proceedings in order to deprive the employee of any right under Title VII. Cf. Burlington Northern & Santa Fe Railway Company v. White, __ U.S. __, 126 S. Ct. 2405, 165 L. Ed. 2d 345, 359 (2006)(Title VII's anti-retaliatory provision only applies to those employer actions "that would have been materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")(citations omitted). In any event, the evidence is undisputed that the Employment Security Commission ultimately awarded such unemployment benefits to Plaintiff, so no harm was suffered regarding that claim. See White, __ U.S. __, 165 L. Ed. 2d at 359

("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.")  Accordingly, the Court finds that Plaintiff has failed to establish a <u>prima facie</u> case of retaliation under Title VII.

### C.    Plaintiff's Denial Of FMLA Leave Claim.

The Family and Medical Leave Act allows an "eligible employee" to take a total of 12 workweeks of leave during any 12-month period for qualifying reasons such as "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).  The statute specifically excludes from the general definition of an "eligible employee" any employee who is employed at a work site with less than fifty (50) employees if the total number of employees employed by that employer within seventy-five (75) miles of that work site is less than fifty (50).  29 U.S.C. § 2611(2)(B)(ii).  Where a plaintiff cannot demonstrate that he or she is an "eligible employee" as defined by 29 U.S.C. § 2611(2)(B)(ii), the plaintiff is ineligible for FMLA coverage.  <u>See Hackworth v. Progressive Casualty Insurance Co.</u>, 468 F.3d 722 (10th Cir. 2006).

In this case, Plaintiff asserts that Defendant violated the FMLA by denying a leave of absence to Plaintiff to care for her son.  She contends that because Defendant granted her request for leave regarding her own medical condition in March of 2002, the Defendant was obligated under the FMLA to grant her a leave of absence to care for her son.[1]

As a preliminary matter, the evidence is unclear as to whether Plaintiff complied with all of Defendant's requirements regarding medical certification of the need for leave and whether

---

[1] Plaintiff does not deny that Defendant allowed her to take more than 12 weeks of leave for her own health in 2002.  Rather, Plaintiff alleges that her supervisor Wayne Bates denied her leave to "take care of [her] son and complete the tests that needed to be done for the next step toward his surgery" (as she stated in an email to Mr. Yeomans on March 5, 2002).  However, Plaintiff admits that she was able to use her sick and vacation days to cover time off needed for her son's medical appointments and that no surgery had been scheduled at the time she told Wayne Bates that she would need to take time off for her son's surgery.  Plaintiff also admits that it was "somewhat in the air" as to whether her son even needed surgery.

Plaintiff's son in fact had a "serious health condition" within the meaning of the FMLA at the time of Plaintiff's alleged request for leave. (See supra, n. 1) However, the Court need not address these issues, because Plaintiff has presented no evidence to establish that she was employed by Defendant at a work site where at least fifty (50) employees were employed by Defendant at or within seventy-five (75) miles of that work site. Indeed, Defendant has provided uncontroverted evidence that: 1) it operates no other facilities within seventy-five (75) miles of its Charlotte, North Carolina facility; 2) it employed 47 employees at the Charlotte facility in December of 2001, and 46 employees at the Charlotte facility in February of 2002; and 3) at no time during the entire calendar year of 2001 or 2002 did the number of employees employed by Defendant at the Charlotte facility reach or exceed 50.

Based upon the foregoing uncontroverted evidence, it is clear that Plaintiff has failed to establish that she is an "eligible employee" within the meaning of the FMLA. Because Plaintiff cannot prove an essential element of her FLMA claim, Defendant is thus entitled to summary judgment. See Hackworth v. Progressive Casualty Insurance Co., 468 F.3d 722 (10th Cir. 2006)(holding that, in order to survive summary judgment, plaintiff must produce evidence tending to show that the employer employed at least 50 employees within 75 surface miles of plaintiff's worksite.).

**D.      Plaintiff's Slander Claim.**

In Count VII of her Complaint, Plaintiff alleges that unnamed persons called her a "man-eater," which she claims constitutes a slander against her. Plaintiff testified that these comments were made in March or April of 2001. The Court assumes that Plaintiff asserts this as a separate cause of action under North Carolina state law and, accordingly, the Court exercises supplemental jurisdiction over said claim pursuant to 28 U.S.C. § 1367.

As an initial matter, the Court notes that Plaintiff has not established any legal basis upon which liability for slander may be imputed to Defendant for the alleged acts by one or more individual employees. Nevertheless, even if such basis were present in this case, North Carolina imposes a one year statute of limitations for slander and libel claims. N.C.G.S. § 1-54(3). Such causes of actions begin to accrue on the date the defamatory statements were made. Martin v. Boyce, 217 F.R.D. 368, 371 (M.D.N.C. 2003). In this case, at the very latest, the applicable statute of limitation would have run in or about April of 2002. Plaintiff did not file her Complaint until November 3, 2003. Plaintiff's slander claim against Defendant is therefore barred by N.C. Gen. Stat. § 1-54(3). See Martin, 217 F.R.D. at 371 (dismissing plaintiff's libel and slander claims on statute of limitations grounds because complaint was filed more than one year after the defamatory statements were made).

Even if Plaintiff's slander claim were not barred by the statute of limitations, Defendant would nevertheless be entitled to summary judgment on such a claim because the claim is not supported by admissible evidence. In her deposition, Plaintiff testified that her supervisor, Wayne Bates, called her a "man-eater," but then later stated that it was actually the Human Resources Manager, Russell Yeomans, who made the statement. Plaintiff also testified that she learned about Yeomans' remark from Al Padron. Yet, Plaintiff has not presented any affidavit based on personal knowledge or brought forth any witness who could testify as to whether the comments were actually made. Under these circumstances, Plaintiff's testimony based upon hearsay cannot be used to establish her claim. See, e.g., LaChance v. Town of Blacksburg, 1999 U.S. Dist. LEXIS 12826, at *3 (W.D.Va. June 21, 1999)(quoting Wright-Simmons v. Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998))("Hearsay testimony cannot be considered because a

third party's description of a witness' supposed testimony 'is not suitable grist for the summary judgment mill.'").

### E. Plaintiff's "Misrepresentation" Claim.

In Count XIX of her Complaint, Plaintiff alleges that Defendant engaged in "misrepresentation" with regard to statements that Human Resources Manager, Russell Yeomans, made to Plaintiff's prospective employer. North Carolina recognizes causes of action for fraud and negligent misrepresentation; however, these claims are applicable within the context of a factual assertion made to the plaintiff upon which he or she reasonably relies. See e.g., Sullivan v. Mebane Packaging Group, Inc., 158 N.C. App. 19, 26-33, 581 S.E.2d 452 (Ct. App. 2003). The factual basis for Count XIX of Plaintiff's complaint is a statement made not to Plaintiff, but rather to a prospective employer. Therefore, the Court finds that the tort of "misrepresentation" is not applicable. However, the Court will consider Plaintiff's factual allegations within the context of a claim under North Carolina state law for slander and "blacklisting." As such, the Court exercises supplemental jurisdiction over said claim pursuant to 28 U.S.C. § 1367.

As noted above, North Carolina has a one-year statute of limitations for slander claims. According to Plaintiff, Yeomans made certain statements to Plaintiff's prospective employer, Lisa Graeber, on April 12, 2002. (Complaint, Count XIX). Thus the statute of limitations on any slander claim would have run on April 12, 2003. Plaintiff did not file her Complaint until November 3, 2003. As a result, any slander claim based on Russell Yeomans' statement to Ms. Graeber is barred by N.C.G.S. § 1-54(3).

North Carolina also prohibits any person, after having discharged any employee from his or her service, from preventing or attempting to prevent, by word or writing of any kind, that

discharged employee from obtaining employment with any other person. N.C.G.S. § 14-355. However, statements made about a former employee in response to a request from a prospective employer are privileged under this statute. See Friel v. Angell Care Inc., 113 N.C. App. 505, 511 440 S.E.2d 111 (Ct. App. 1994)(holding that for § 14-355 to be violated, the statement to the prospective employer must have been unsolicited); Cortes v. McDonald's Corp., 955 F. Supp. 531, 535 (E.D.N.C. 1996)(granting motion to dismiss with respect to N.C.G.S. § 14-355 on the grounds that that statute permits recovery only for statements from the former employer that were unsolicited and, upon the plaintiff's own admission in his complaint, the "allegedly negative references given about [plaintiff] were given in response to the requests of potential employers").

Again, Plaintiff alleges that Defendant Yeomans provided negative information about Plaintiff to her prospective employer, Lisa Graeber. However, Plaintiff also acknowledges that this negative information was provided by Yeomans in response to a solicitation from Graeber. Based upon these facts, Plaintiff is not entitled to recover under N.C.G.S. § 14-355 as a matter of law. To the extent that Plaintiff asserts a claim for "blacklisting," that claim must therefore be dismissed.

***

Accordingly, the undersigned finds there are no facts upon which a reasonable jury could return a verdict for Plaintiff regarding her claims of sex discrimination and retaliation under Title VII, denial of leave under the FMLA, and slander and misrepresentation/blacklisting under North Carolina state law. The Court expresses no opinion as to Defendant's other affirmative defenses presented in the Motion for Summary Judgment regarding failure to exhaust administrative remedies and judicial estoppel, finding that the matters discussed above exceed

the minimum requirement for the undersigned to grant in part Defendant's Motion for Summary Judgment as to Plaintiff's claims.

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion for Summary Judgment" (Document No. 68) is **GRANTED** with respect to all claims asserted in Plaintiff's Complaint (Document No. 1) <u>except</u> the claims for sexual harassment and general harassment.


Signed: February 2, 2007


David C. Keesler
United States Magistrate Judge